Dekbicny, J,
delivered the opinion of thf *491 court. A rehearing- has been granted in this & . . . case, with a view principally to obtain a more particular investigation of the following questions, which, on the first argument, passed almost unnoticed ;
1. After tfye filing of the tableau of distribution, by the .jndics of the creditors of Williamson and Patton, was a general notice to all the creditors, an indispensable formality, which the syndics had no right to wave ?
2. Under the general refusal, to let the appellants go into evidence, to prove that the judgment relied on by the appellees was null, collusive and fraudulent, were the appellants deprived of their right of shewing nullities, apparent on the face of the record of that judgment ?
To come al a correct decision of the first question, we must previously ascertain, by what law the proceedings in this case are governed. This is a case of cessio bonorum in 1811, consequently, after the repeal of the insolvent act of 1805, by the act of 1808, which last act, as it provided only for the relief of debtors in actual imprisonment, left other cases to be regulated by the ancient laws of the country. Under those laws, then the voluntary cession of goods in this case was made, and by those laves it ought to be governed. But in the application of those laws,, to *492 ^ie wilder consideration, some embarrassment must result from the changes introduc-ec^ ^y ^ie Practice of our courts in the manner of conducting the proceedings in cases of this na , nr • i ' • „ ture. Berore a bpamsh court, in a case of ces~ sio bonorum, each creditor pursues his own claim individually : he is notified of all 'ihe other demands, and may debate and oppose them. Upon all those claims collected together, the judge pronounces by one single judgment, classing the creditors according to their rank, and ordering them to be paid in that order. The person appointed, under the name of administrator of the insolvent’s estate, has no other power than that of administering the property and collecting the debts ; he has no right to interfere in the claims of the creditors. With us, the practice has been introduced, (probably borrowed from the ordu nance of Bilbao) for the creditors to appoint one or twio common agents, under the name of syn-dics, whose powers, before the enactment of the law of 1817, had never been well defined, but whose business was understood to be that of taking care of, and administering the property surrendered, and of doing all needful acts towards preparing a final settlement and liquidation/af the common estate, agreeably to the provisions of.the afore-mentioned ordinance, which vests the syndics with those powers and no more. *493 and always reserves to the creditors, the right of debating and approving, or opposing what is done through the course of proceedings until the end.
In our courts these syndics sued, and were sued, as the representatives of all the creditors : the individual creditors themselves not appearing, except in opposition to the syndics, when they refused to admit their claim.
But, although the general mode of preparing the liquidation of the esrate was so far altered, yet, when the time was come, finally, to pronounce upon the respective claims of the creditors, and to class them according to their rank, it was the invariable practice of our courts to cause general notice to be given to them all, through the newspapers, informing them that the tableau of distribution of the proceeds of the estate wTas laid before the court, and calling on them to shew cause why it should not be approved. By that general advertisement, the most important part of the Spanish proceedings was preserved, to wi't, the opportunity given to each creditor to support his own right, in opposition to the claims of the others, and, of course, against those of the syndics themselves, whose interest, upon that occasion, was adverse to that of their constituents.
Under that practice the present syndics were *494 aPPointe<i * and by that practice their conduct must be governed. They had no power to represent the creditors where the rules, under L ⅜ which they were named, required the creditors „ themselves to be called. the consequence or this must be that, if they undertook to act for them on such occasion, their act is null, the pro. ceedings irregular, and their consent to wave the irregularity, not binding, because they had no right to give it.
The appellees have maintained that the law of 1817, not the ancient laws, ought to be the rule by which all the proceedings, had in this case since its enactment, should be governed. Should we acquiesce in that opinion, the cause of the ap-pellees would not be advanced thereby, for, by the 35th section of the act, it is expressly provided that, on the filing of the statement or tableau of distribution, notice shall be given to the creditors by biils or publication, that they may show cause, within ten days, why it should not be ho-mologated.
The case of Brown vs. Kenner & al. 3 Martin, 270. is relied on as one which furnishes a precedent of a dispute between a creditor and the syndics, decided upon without the presence of the other creditors, But in that case, the question here examined, was not raised.
We do not feel at liberty to enquire into the *495 particular circumstances of this case, ancl to lay 1 _ 7 J aside the rules by which it ought to have been governed, in order to ascertain, ourselves, whe* ° 7 7 ther there is or not anv creditor, of this estate, . ' who can claim preference over the appellees. I he tableau may, as they assert, shew that there is none ; but this is begging the question; for if this tableau was to be laid before all the creditors, to be assented to or opposed by them, it is not conclusive, now, as to any thing that it contains.
This view of the case, precludes any necessity of investigating the other question. The judgment of this court must be altered, and the parties replaced where they were before the rule, complained of by the appellants, was obtained.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be reversed, and that the parties be replaced in the situation in which they respectively stood, before the rule of the 6th of May last was granted ; and it is further ordered that the appellees pay costs.